AO 106 (Rev. 04/010) Application for Search Warrant        AUTHORIZED AND APPROVED/DATE:   /S Bow Bottomly 6/16/2025

# UNITED STATES DISTRICT COURT
### for the

| WESTERN | DISTRICT OF | OKLAHOMA |

| In the Matter of the Search of | ) | |
| Kik c/o MediaLab.AI Inc. accounts with the | ) | Case No:  M-25-393-STE |
| usernames smh2022_c3t and smh2022 | ) | |

## APPLICATION FOR SEARCH WARRANT

I, a federal law enforcement officer or attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following property *(identify the person or describe property to be searched and give its location)*:

See Attachment A, which is attached and incorporated by reference.

Located in the Central District of California, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, which is attached and incorporated by reference.

The basis for the search under Fed. R. Crim.P.41(c) is *(check one or more)*:
- ☒ evidence of the crime;
- ☒ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
| --- | --- |
| 18 U.S.C. § 2252A(a)(5)(B) | Distribution of child pornography |
| 18 U.S.C. § 2252A(a)(2) | Possession of child pornography |

The application is based on these facts:

See attached Affidavit of Special Agent Marisol Flores, Federal Bureau of Investigation (FBI), which is incorporated by reference herein.
- ☒ Continued on the attached sheet(s).
- ☐ Delayed notice of _____ days *(give exact ending date if more than 30 days)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet(s).

_____
*Applicant's signature*

MARISOL FLORES
SPECIAL AGENT
FBI

Sworn to before me and signed in my presence.

Date:   **Jun 16, 2025**

City and State:   **Lawton, OK**   ▟▟▟▟▟▟▟

_____
*Judge's signature*

SHON T. ERWIN, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT APPLICATION

I, Marisol Flores a Special Agent ("SA") with the Federal Bureau of Investigation

("FBI"), being duly sworn, depose and state as follows:

## INTRODUCTION

1.      I have been employed as a SA with the FBI since May 2015, and I am
currently assigned to the Oklahoma City Division.  I am currently assigned to investigate
violations of federal law involving the exploitation of children.  I have gained expertise in
conducting such investigations through everyday work in my current role as an SA with the
FBI.

2.      As a federal agent, I am authorized to investigate violations of United States
laws and to execute warrants issued under the authority of the United States.

3.      This Affidavit is made in support of an application for a search warrant for
information associated with the Kik Messenger Username: **smh2022_c3t**,

("**SUBJECT KIK ACCOUNT 1**"), and Kik Messenger Username: **smh2022**,
("**SUBJECT KIK ACCOUNT 2**"), that is stored at the premises owned, maintained and
operated by MediaLab, Inc., a company headquartered at 1237 7th Street, Santa Monica,
California 90401, which functions as an electronic communications service and remote
computing service, and is a provider of electronic and remote computing services.  This
Affidavit is made in support of an application for a search warrant under 18 U.S.C.
§§ 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A) to require MediaLab, Inc. to disclose to the
government records and other information in its possession pertaining to the subscriber or
customer associated with the **SUBJECT KIK ACCOUNT 1 and SUBJECT KIK**

**ACCOUNT 2**, including the contents of communications, which represent evidence, fruits, and/or instrumentalities of violations of 18 U.S.C. § 2252A.

4.     This investigation, described more fully below, has revealed that an individual knowingly utilized the Kik application to possess and distribute child pornography, in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and 2252A(a)(2), and that there is probable cause to believe that evidence, fruits, and instrumentalities of such violations are currently stored in records maintained by MediaLab, Inc. and associated with the **SUBJECT KIK ACCOUNT 1** and **SUBJECT KIK ACCOUNT 2**, more specifically described in Attachment A, incorporated with this affidavit.

5.     Since this Affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that evidence, fruits, and instrumentalities of the foregoing violations are presently located at the **SUBJECT KIK ACCOUNT 1** and **SUBJECT ACCOUNT 2**.

## DEFINITIONS

6.     The following definitions, inclusive of all definitions contained in 18 U.S.C. § 2256, apply to this affidavit and the attachments incorporated herein:

    a.     "Internet Service Providers" (ISPs) are commercial organizations that provide individuals and businesses access to the Internet. ISPs provide a range of functions for their customers, including access to the Internet, web hosting, email, remote storage, and co-location of computers and other communications equipment. ISPs can offer various means by which to access the Internet, including telephone-based dial-up, satellite-based internet access, dedicated circuitry, or broadband-based access via a digital subscriber line (DSL) or cable television lines. ISPs typically charge a fee, based upon the volume of data, commonly referred to as bandwidth, in

addition to the type of connection that the connection supports. Many ISPs assign each subscriber an account name, such as a user name or screen name, as well as an email address and an email mailbox, and the subscriber typically creates a password for the subscriber account. By using a computer equipped with a telephone (dial-up) or cable modem, the subscriber can establish communication with the ISP, and can access the Internet by means of a combination of the user account name and password.

b.      "Internet Protocol address" or "IP address" refers to a unique number used by a computer or electronic device to access the Internet. IP addresses can be dynamic, meaning that the Internet Service Provider (ISP) assigns a different unique number to a computer when it accesses the Internet. IP addresses may also be static, which means the ISP assigns a user's computer a particular IP address that is used each time the computer accesses the Internet.

c.      "Mobile applications" or "mobile apps" are computer programs or software applications specifically designed to run on mobile devices (e.g., smartphones, tablets, e-readers, etc.). Mobile applications are generally downloaded from application distribution platforms operated by specific mobile operating systems, like App Store (Apple mobile devices) or Google Play Store (Android mobile devices).

d.      "CyberTip" refers to a "CyberTipLine Referral" issued by the National Center for Missing and Exploited Children ("NCMEC"). Electronic Service Providers (e.g., Google, Yahoo, Meta, Snapchat, Kik Messenger, etc.) that discover child pornography files on their platforms submit that information to NCMEC, which then distributes the information to appropriate law enforcement agencies.

d.      "Cloud storage service" refers to a publicly accessible, online storage provider that can be used to store and share files in large volumes. Users of cloud-storage services can share links and associated passwords to their stored files with others in order to grant access to their file collections. Such services allow individuals to easily access these files through a wide variety of electronic devices such as desktop computers, laptops, mobile phones or tablets, from anywhere. Many services provide free access up to a certain size limit.

e.      "Instant messaging" is a type of communication that offers real-time text transmission over the Internet. Instant messaging generally involves short messages which are transmitted between two or more parties. Various social networking, dating and gaming websites and mobile applications offer instant messaging for users to communicate amongst themselves. More advanced features of instant messaging include push technology to provide real-time text, and the ability to send/receive digital files, clickable hyperlinks, and video chat.

f.    A "hash value" is value given to a file or data after a mathematical function converts the data into an alpha-numeric value.  A hash value is akin to a digital fingerprint, in that dissimilar data will not produce the same hash value after being subjected to the same hash algorithm.  A hash value is unique to the specific data from which the hash value was generated.  Hash values can be used to search for identical data stored on various digital devices, as identical data will have the same hash value

g.    The terms "records," "documents," and "materials," as used herein, include all information recorded in any form, both visually or aurally, and by any means, whether in handmade form (including, but not limited to: writings, drawings, and paintings), photographic form (including, but not limited to: microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, and photocopies), mechanical form (including, but not limited to: phonograph records, printing, or typing), or electrical, electronic, or magnetic form (including, but not limited to: tape recordings, cassettes, compact discs, electronic, or magnetic storage devices such as floppy diskettes, hard disks, CD-ROMs, digital video disks or DVD's, Personal Digital Assistants (PDAs), Multimedia Cards (MMCs), memory sticks, optical disks, printer buffers, smart cards, memory calculators, electronic dialers, electronic notebooks, as well as digital data files and printouts or readouts from any magnetic, electrical or electronic storage device).

## INFORMATION REGARDING KIK MESSENGER

7.    Kik Messenger (hereinafter, "Kik") is a free instant messaging mobile application designed and previously owned by Kik Interactive Incorporated, a company based in Waterloo, Canada[1].  Kik uses the Internet to allow users to send and receive instant messages, photos and videos to other Kik users.  During the account registration process, users are prompted to create a username, which cannot later be changed, and a display or vanity[2] name, which other users initially see when communicating.  During the registration

---

[1] Kik was purchased in or about October 2019 by MediaLab, Inc., a U.S.-based technology company headquartered in California.

[2] Based on my training and experience, I am aware that a Kik username cannot be changed; however, a user may change their Kik vanity name whenever and as often as they would like.

process, users are also asked to provide an email address, date of birth, user location and a profile picture. Email addresses can be "confirmed," which means the user verified the email address is valid by clicking a verification link sent from Kik to the provided email address, or "unconfirmed," which means the email address is invalid, or the user did not click on the link from Kik. A user does not have to "confirm" the email address in order to create an account. In addition, a key feature of Kik is that users are not required to provide accurate information during the account registration process.

8.    Once an account is created, a user is able to locate groups and other users through a search feature. The search feature generally requires a user to know an intended recipient's username to locate them. Once connected, Kik users can share messages, images and videos via private messages to other users. Kik also allows users to create chatrooms, through which groups of up to 100 users can exchange messages and digital files. These chatrooms, commonly referred to as "Kik Groups," are typically administered by the user who created the chatroom, and this user has the authority to add, remove, and ban other users from the group, as well as to promote other users to "administrator." This is true for both private and public chatrooms. Many public groups are created with a group code that contains a "hashtag" (e.g., "#KikTeens"), allowing the group or chatroom to be located more easily.[3] Specifically, a user will search for a public group using a term or word associated with the group name, which is often contained in the hashtag. Once a group is created, Kik users can engage in a "group chat" and exchange messages and content within the group.

---

[3] The hashtag locating feature is not typically available for private groups.

9.    According to Kik's Terms of Service, which each user must acknowledge when creating an account, it is a violation of the agreement to use Kik to upload, post, comment on, or store content that is obscene, offensive, contains pornography, or is harmful to minors in any way.  These Terms of Service specifically state that "…[Kik] may review, screen and delete your User Content at any time if we think it may violate these Terms. You are responsible for the User Content that you send through the Services, including for back up of such content."

10.    To combat the proliferation of child pornography on its platform, the Kik Trust and Safety Team uses a third-party company to review profile pictures that are uploaded by users and groups.  Kik also uses PhotoDNA to compare user-uploaded images against a database of known child pornography images that are in circulation. Any images that are flagged and reported by the third-party company or the PhotoDNA software are subsequently viewed by a member of the Kik Trust and Safety Team.

11.    Kik also allows users to report other users who have abused or harassed them within the app. These are referred to as "Abuse Reports."  When a Kik user submits an Abuse Report, they can include their full conversation history, including text and any images or videos transmitted in the conversation. When Kik receives an Abuse Report, an employee reviews the reported material to verify that it contains child pornography or is otherwise considered child exploitative material.

12.    Any material determined by Kik to be exploitative through typical hash value match(ing), third-party monitoring, or Abuse Reports is subsequently reported to the

National Center for Missing and Exploited Children ("NCMEC") via a CyberTipline referral. Kik provides NCMEC with the reported material, as well as basic subscriber information for the suspect account. This subscriber data includes, but is not limited to, the information entered by the user during the account registration process, any updates to this information after the registration process, device type (e.g., iPhone, Samsung Galaxy S5, etc.,), the Kik application version used, and log-in data associated with the last thirty days of account activity. Upon reporting this information to NCMEC, Kik deletes or disables the suspect account for violating its Terms of Service.

13.     Based on my training and experience in child exploitation investigations, I am aware that Kik is a prominent meeting place for individuals seeking to share child pornography and engage in child exploitative dialogue. I have investigated several offenders who used Kik to transport, distribute, and receive child pornography, as well as other offenders who used the platform to coerce and entice minors to engage in illegal sexual activity. Based on information obtained from interviews with some of these offenders, I am aware that Kik is a preferred platform for child exploitation offenders because the application facilitates anonymous communication, which assists offenders in avoiding detection by law enforcement.

## ADDITIONAL CHILD PORNOGRAPHY COLLECTOR CHARACTERISTICS

14.     The following indicates characteristics of child pornography collectors that I have learned through training, working multiple investigations involving child

pornography, and from other law enforcement officers with a background in child pornography investigations:

a. The majority of individuals who collect child pornography are persons who have a sexual attraction to children. They receive sexual gratification and satisfaction from sexual fantasies fueled by depictions of children that are sexual in nature.

b. The majority of individuals who collect child pornography collect sexually explicit materials, which may consist of photographs, magazines, motion pictures, video tapes, books, slides, computer graphics or digital or other images for their own sexual gratification. The majority of these individuals also collect child erotica, which may consist of images or text that do not rise to the level of child pornography but which nonetheless fuel their deviant sexual fantasies involving children.

c. The majority of individuals who collect child pornography often seek out like-minded individuals, either in person or on the Internet, to share information and trade depictions of child pornography and child erotica as a means of gaining status, trust, acceptance and support. The different Internet-based vehicles used by such individuals to communicate with each other include, but are not limited to, peer to peer, e-mail, e-mail groups, bulletin boards, IRC, newsgroups, instant messaging, and other similar vehicles.

d. The majority of individuals who collect child pornography maintain books, magazines, newspapers and other writings, in hard copy or digital medium, on the subject of sexual activities with children as a way of understanding their own feelings toward children, justifying those feelings and finding comfort for their illicit behavior and desires.

Such individuals rarely destroy these materials because of the psychological support they provide.

e. The majority of individuals who collect child pornography often collect, read, copy or maintain names, addresses (including e-mail addresses), phone numbers, or lists of persons who have advertised or otherwise made known in publications and on the Internet that they have similar sexual interests. These contacts are maintained as a means of personal referral, exchange or commercial profit. These names may be maintained in the original medium from which they were derived, in telephone books or notebooks, on computer storage devices, or merely on scraps of paper.

f. The majority of individuals who collect child pornography rarely, if ever, dispose of their sexually explicit materials and may go to great lengths to conceal and protect from discovery, theft, and damage their collections of illicit materials. They almost always maintain their collections in the privacy and security of their homes or other secure location.

## BACKGROUND OF THE INVESTIGATION

15. On March 14, 2025, at 20:41:22 UTC, Media Lab/Kik Electronic Service Provider submitted a CyberTip[4] to the NCMEC regarding Kik Username: smh2022_c3t communicating with another Kik user how smh2022_c3t sexually abused their younger sister. Media Lab/Kik provided the following information[5] to NCMEC:

---

[4] CyberTipline Report 207673027.
[5] Media Lab/Kik provided numerous IP addresses for Logins, however most of those IP addresses were AT&T wireless IP addresses, which are unable to be geographically confirmed. At least three of those IP addresses were not AT&T wireless. Those three IPs are discussed further in paragraph 17.

9

Name:  Shawn Me

Address: Fort Smith, AR US

Date of Birth: 08-05-1992

Email Address: shawn.marlow2020@gmail.com

All email addresses reported?  Yes

ESP Product/Service: Kik

Screen/User Name: smh2022_c3t

Display Name: smh2022

ESP User ID: smh2022_c3t

Compromised Account?  No

IP Address:  12.75.0.97  03-13-2025  17:30:00 UTC

Estimated Location:  Fort Smith, Arkansas, US at 03-13-2025  17:30:00 UTC

Media Lab/Kik described in their information to NCMEC the above user communicated the following to another user in a private chat on January 13, 2025, 02:23:27.014000 UTC:

> "I started eating my sisters pussy when she was 6 and I was 13 she sucked my dick and swallowed my cum first time and 6 months later"

16.    On March 28, 2025, at 09:10:32 UTC, Media Lab/Kik Electronic Service Provider submitted a CyberTip[6] to the NCMEC regarding Kik Username: smh2022 distributing pornography to another Kik user in a private chat.  Media Lab/Kik provided the

---

[6] CyberTipline Report 208293727.

following information[7] to NCMEC:

Kik Messenger

Email Address: shawn.marlow2020@gmail.com

ESP Product/Service: Kik

Screen/User Name: smh2022

Display Name: Shawn Me

ESP User ID: smh2022_c3t

Media Lab/Kik described in their information to NCMEC the above user uploaded a video and an image to another user in a private chat.

17.    The video file, 2c9d6ba1-58ef-4c88-93e3-1dc50690367c.mp4, was uploaded on March 20, 2025, at 13:26:14 UTC. This video was one minute and forty seconds in length. The video depicted a prepubescent female, whose face was visible from the camera view, with a pink, short sleeve shirt on. The prepubescent female was performing oral sex on a pubescent female of an indeterminate age, who was naked from at least the waist down. The prepubescent female continues to perform oral sex on the other female while the other female is both standing and sitting throughout the video.

18.    The image file, 4eb0c4de-cb4a-432c-95a5-60bcf03e383a.jpg, was uploaded on March 20, 2025, at 13:24:44 UTC. This image depicted a prepubescent female lying on her back, naked from her chest down exposing her breast area and vagina. Standing next to

---

[7] Media Lab/Kik provided numerous IP addresses for Logins, however most of those IP addresses were all AT&T wireless IP addresses, which are unable to be geographically confirmed.

the child is an adult male visible from the waist down with an erect penis. The prepubescent female is holding the adult male's erect penis with both of her hands.

19.    On March 26, 2025, an administrative subpoena was served to Kik, through its parent company MediaLab.ai.   On May 3, 2025, Kik, through its parent company MediaLab.ai,       provided       information       regarding       email       address: shawn.marlow2020@gmail.com; screen/user name: smh2022_c3t; display name: smh2022; ESP User ID: smh2022_c3t pursuant to an administrative subpoena served on March 26, 2025.  The following is a portion of the information provided by Kik:

Date: May 3, 2025

First Name: Shawn

Last Name: Me

Email: shawn.marlow2020@gmail.com

Username: smh2022

Login IP: 70.182.93.83  52886  2024-10-13  16:58:45  CAN

Login IP: 70.182.71.46  59740  2024-11-10  18:00:02  CAN

Login IP: 70.182.71.46  53556  2025-02-16  18:01:00  CAN

Registration timestamp:    2021/12/21 07:28:21  UTC

20.    On March 26, 2025, an administrative subpoena was served to Google Inc. to provide information pertaining to email address: shawnmarlow2020@gmail.com.  On March 26, 2025, Google Inc. responded with the following information[8]:

_____

[8] Additional information was provided by Google Inc. Only a portion is listed here as results.

**Google Subscriber Information**

Google Account ID: 762897971482

Name: Shawn Marlow

Given Name: Shawn

Family Name: Marlow

E-Mail: shawn.marlow2020@gmail.com

Created on: 2018-08-28  21:32:13 Z

**Account Recovery**

Recovery SMS: +14059683540 [US] = T-Mobile

**Postal Address**

Created on: 2018-11-20 21:35:34 UTC

Postal Code: 73106

Locality Name: Oklahoma City

Address Line: 1729 Northwest 3rd Street

Recipient Name: Shawn Marlow

Phone Number Saved to Address: + 1 405-446-6174[9]

**Postal Address**

Created on: 2019-11-10 14:07:59 UTC

Postal Code: 73045

Locality Name: Harrah

---

[9] Open-source records show Shawn Marlow associated with this phone number on or about June-July of 2019

13

Postal Code

Address Line: 9633 North Harrah Road[10]

Recipient Name: Shawn Marlow

21.    Based on open-source records, it was determined IP addresses 70.182.71.46 and 70.182.93.83 were controlled by Cox Communications.  On or about May 6, 2025, an administrative subpoena was served to Cox Communications to provide information pertaining to Kik Login IP addresses: 70.182.93.83 on 2024-10-13 16:58:45 UTC Port 52886 and 70.182.71.46 on 2024-11-10 18:00:02 UTC Port 59740, and 2025-02-16 18:01:00 UTC Port 53556.  On or about May 12, 2025, Cox Communications responded with the following regarding both IP addresses:

Name: Nowakoski LLC DBA Tubs of Sud

Address: 3400 S Harrah Rd Harrah, OK 73045-6078

Telephone number: 405-637-5331

22.  On April 9, 2025, an administrative subpoena was served to T-Mobile USA, provide information pertaining to telephone number: 405-968-3540. On or about April 22, 2025, T-Mobile USA, Inc. responded with the following information:

Subscriber Name: Ashley Livengood

Subscriber Address: 12629 NE 39th St., Spencer, OK 73084

Subscriber Status: Active

Activation Date: 08/15/2022

---

[10] Open-source records show Shawn Marlow associated with this address since approximately June of 2019 to January of 2022.

21.    Based on my training and experience, and the facts presented thus far, I believe the same individual used Kik username: smh2022_c3t, **KIK SUBJECT ACCOUNT 1**, and Kik username: smh2022, **KIK SUBJECT ACCOUNT 2**, who possessed and distributed child pornography.  I am seeking authorization to search the **KIK SUBJECT ACCOUNT 1** and **SUBJECT KIK ACCOUNT 2** which belong to the individual who utilized the Kik messaging application to possess and distribute child pornography.

22.    On June 5, 2025, law enforcement submitted a preservation request to Kik for the contents of the **SUBJECT KIK ACCOUNT 1**.  Media Lab acknowledged the request and assigned it the case number 2331119. On June 13, 2025, law enforcement submitted a preservation request to Kik for the contents of the **SUBJECT KIK ACCOUNT 2.**

23.    Based on the investigation, it is likely Shawn Michael Marlow (MARLOW) is the owner and user of the **SUBJECT KIK ACCOUNT 1** and **SUBJECT KIK ACCOUNT 2** and he is 33 years old.

24.    Based on my training and experience and the facts presented above, it is likely MARLOW is a child pornography collector and he has been using KIK MESSENGER to engage in violations of 18 U.S.C. § 2252A since his account was created on December 21, 2021.  Therefore, this affidavit requests information back to December 21, 2021.

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

25.    I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular Title 18, United States Code, Sections 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require MediaLab, Inc. to disclose to the government

15

copies of the records and other information (including the content of the communications) particularly described in Section I of Attachment B.    Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

## CONCLUSION

26.    Based on the information set forth in this Affidavit, I submit there is probable cause to believe that evidence, fruits, and instrumentalities of a violation of 18 U.S.C. § 2252A(a)(2)(A) (receipt and distribution of child pornography) are contained in the **SUBJECT KIK ACCOUNT 1** and **SUBJECT KIK ACCOUNT 2**. Based on the foregoing, I request that this Court issue an order authorizing the search of Kik username account **smh2022_c3t** (the **SUBJECT KIK ACCOUNT 1**), and Kik username account **smh2022** (the **SUBJECT KIK ACCOUNT 2**) more particularly described in Attachment A, for the items, materials, and records more specifically identified in Attachment B.

27.    I further request that this Court direct MediaLab, Inc. to disclose any responsive data by sending it to FBI Oklahoma City, including by use of the U.S. Postal Service or another courier service, notwithstanding 18 U.S.C. §§ 2252, 2252A or similar statute.

28.    This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711(3) and 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A).  Specifically, the Court is "a district court of the United States . . . that - has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

16

29.    Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

Marisol Flores
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me on June 6, 2025.

SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE

17

# ATTACHMENT A

## DESCRIPTION OF ITEMS TO BE SEARCHED

This warrant applies to information associated with the **SUBJECT KIK ACCOUNT 1**, Kik username **smh2022_c3t,** and **SUBJECT KIK ACCOUNT 2**, Kik username **smh2022**, which is stored at premises owned, maintained, controlled, or operated by MediaLab, Inc., a company headquartered at 1237 7th Street, Santa Monica, California 90401.

## ATTACHMENT B

## DESCRIPTION OF ITEMS TO BE SEIZED AND SEARCHED

In order to ensure that agents search only those computer accounts and/or computer files described herein, this search warrant seeks authorization to permit employees of MediaLab, Inc. (hereafter, "MediaLab") to assist agents in the execution of this warrant. To further ensure that agents executing this warrant search only those accounts and/or computer files described below, the following procedures have been implemented:

1.      The warrant will be presented to MediaLab personnel by law enforcement agents.  MediaLab personnel will be directed to isolate those accounts and files described below;

2.      In order to minimize any disruption of computer service to innocent third parties, the system administrator will create an exact duplicate of the accounts and files associated with usernames **smh2022_c3t** and **smh2022**, including an exact duplicate of all information stored in the computer accounts and/or files described below;

3.      MediaLab system administrators will provide the exact duplicate of the accounts and files described below and all information stored in those accounts and /or files to the Special Agent who serves this search warrant;

4.      MediaLab will disclose responsive data by sending to the following recipient using the U.S. Postal Service or another courier service, notwithstanding 18 U.S.C. §§ 2252, 2252A or similar statute or code: Special Agent Marisol Flores, FBI – Oklahoma City, 3301 W Memorial Rd., Oklahoma City, Oklahoma 73134 or via email to mflores@fbi.gov.

**Attachment B**

**I:      Information to be disclosed by MediaLab**

To the extent that the information described in Attachment A is within the possession, custody, or control of MediaLab, regardless of whether such information is stored, held or maintained inside or outside of the United States, and including any content, messages, records, files, logs or information that has been deleted but is still available to MediaLab, or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f) on June 5, 2025, MediaLab is required to disclose the following information to the government for each account or identifier listed in Attachment A, for the period of **December 21, 2021 to June 13, 2025**;

1.      Any and all information that has been captured, stored, or maintained relating to Kik accounts **smh2022_c3t** and **smh2022** along with any CyberTips reported to NCMEC by MediaLab;

2.      Any and all subscriber data for user **smh2022_c3t** and **smh2022**, including usernames, first and last name, contact information and email address, profile or background photo, device information, account creation information, IP address logs, and registration information (birth date, email address, and IP address);

3.      Any and all content from the transactional chat log, chat platform log, roster log, abuse reports, content ID data, and email events sent or received by this user, which have not been deleted from MediaLab servers;

4.      Any and all images or videos sent or received by this user, including from both individual or private messages and/or group chats, which have not been deleted from MediaLab servers;

**Attachment B**

5.      Any and all location data relating to this user available on MediaLab servers;

6.      All records or other subscriber information related to this user stored on MediaLab servers, including, but not limited to, account creation date, account access information with IP logs and timestamps, email address(es), date of birth, associated mobile number, and mobile device information;

7.      All content and records currently being preserved by MediaLab pursuant to a Preservation Request submitted on June 5, 2025 (MediaLab Case Number 2331119) and Preservation Request submitted on June 13, 2025.

**II:     Information to be seized by the Government**

All information described above in Section I, including correspondence, records, documents, photographs, videos, chat logs, and electronic messages that constitutes fruits, evidence and instrumentalities of violations of 18 U.S.C. § 2252A including, for each account or identifier listed on Attachment A, information pertaining to the following matters, including attempting and conspiring to engage in the following matters:

1.      Any person knowingly transporting, receiving, distributing, or possessing child pornography, as defined at 18 U.S.C. § 2256(8);

2.      Any person discussing the distribution or receipt of child pornography, or the sexual abuse of children.

3.      Credit card and other financial information including but not limited to bills and payment records;

4.      Evidence of the identity of the individual(s) who used, owned, or controlled the account or identifier listed on Attachment A;

**Attachment B**

5.      Evidence of the times the account or identifier listed on Attachment A was used;

6.      Passwords and encryption keys, and other access information that may be necessary to access the account or identifier listed on Attachment A and other associated accounts.

**Attachment B**